# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 61167-8-II |
| ADAM EZRA PARIS, | |
| Petitioner. | UNPUBLISHED OPINION |

VELJACIC, C.J. — In this timely personal restraint petition (PRP), Adam E. Paris argues that he received ineffective assistance of counsel by both appellate counsel and trial counsel. Because these arguments fail, we deny Paris's petition.

## FACTS

### I.    BACKGROUND FACTS[1]

In December 2010, Paris began dating Danielle[2], who had two daughters, eight-year-old P.M. and five-year-old K.G.-R.  In 2011, Paris moved in with Danielle and her children.

In November 2017, Danielle discovered photographs on their shared computer of Paris having sexual contact with the family dog.  Danielle also found a picture of P.M. mixed in with

---

[1] The background facts rely primarily on the facts set forth in Paris's direct appeal. *State v. Paris*, No. 85912-9-I, slip op. at 1-5 (Wash. Ct. App. Apr. 29, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/859129.pdf, *review denied*, 3 Wn.3d 1020 (2024).

[2] At trial, Danielle used the last name Paris.  For clarity, we refer to Danielle by her first name and mean no disrespect.

the photos. This prompted her to contact the police, and the State charged Paris with animal cruelty, and he was later convicted as charged.

Danielle asked P.M. if Paris had ever touched her inappropriately, but P.M. did not disclose any abuse. Danielle then filed for divorce in late November 2017 and in December 2017, she received a restraining order limiting Paris's contact with the children as part of the dissolution proceedings.

In early 2018, K.G.-R. disclosed sexual abuse by Paris to her school counselor. In February 2018, K.G.-R. and P.M. both met with a child forensic interviewer. K.G.-R. described cuddling but did not disclose the extent of Paris's abuse. P.M. also disclosed that Paris was inappropriate with her but did not disclose the extent of the abuse.

In January 2019, P.M. disclosed to her therapist that Paris sexually assaulted her. That night, K.G.-R. also fully disclosed to Danielle that Paris sexually assaulted her. Then, in February 2019, P.M. and K.G.-R. both disclosed the abuse to a child forensic interviewer.

In March 2019, the State charged Paris with one count of rape of a child in the first degree and one count of child molestation in the first degree regarding P.M., and one count of rape of a child in the first degree and one count of child molestation in the first degree regarding K.G.-R.

Before trial, Paris moved under ER 403 to exclude testimony about his animal cruelty conviction and the underlying photos of him with the family dog. The trial court granted the motion, determining that "the probative value [of the testimony] . . . is substantially outweighed by the prejudicial impact to defense." *State v. Paris*, No. 85912-9-I, slip op. at 3 (Wash. Ct. App. Apr. 29, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/859129.pdf, *review denied*, 3 Wn.3d 1020 (2024); 1 Rep. of Proc. (RP) at 52. But the court explained that it would

"revisit" the issue if defense solicited testimony "that raise[s] an issue about the reason for the mother pursuing the divorce." *Paris*, slip op. at 3; 1 RP at 52.

Voir dire commenced in October 2022, during the COVID-19 pandemic. Consistent with then-current public health guidelines, the trial court required all participants to wear facial coverings and observe social distancing protocols. During voir dire, juror 11 did not indicate that he knew Paris.

II. TRIAL

At trial, P.M. and K.G.-R. testified in detail about Paris raping and molesting them.

Danielle then testified about when and how the girls disclosed the abuse. On cross-examination, defense counsel asked Danielle questions about her attempts to limit Paris's contact with the children, including when she filed for divorce and her request for a restraining order. Defense counsel then pointed out that Danielle alleged that Paris sexually assaulted the girls shortly after seeking the divorce and restraining order. And he elicited testimony that P.M. did not initiate her disclosure to Danielle; rather, Danielle asked P.M. whether Paris had inappropriately touched her.

Outside the presence of the jury, the State argued that defense counsel's cross-examination opened the door to testimony about Danielle's discovery of the photos of Paris with the family dog because it put at issue Danielle's motivation in seeking a divorce and restraining order and prompting P.M. to tell her about any abuse. According to the State, defense counsel's questions suggested that Danielle coached the girls' disclosures for her own purpose in the dissolution proceedings. The trial court agreed and allowed Danielle to testify that she sought the restraining order and confronted P.M. only after she found concerning pictures of Paris and the family dog with a picture of P.M. mixed in.

3

Before redirect examination, the trial court instructed the jury that the evidence was admitted only for the limited purpose of explaining Danielle's motivation for taking certain actions and not for any other purpose.

As the jurors were walking out during a recess, the bailiff saw juror 11 shake hands with a spectator. The bailiff informed the parties. The trial court questioned juror 11, who stated that he knew the spectator, and another spectator, and did not have any conversations about the case and that he could "fulfill [his] obligation in the most pure way possible." 2 RP at 774. He further informed the trial court that his acquaintance with the spectators would not interfere in any way with his ability to be fair and impartial in this case. The trial court permitted the trial to resume with juror 11 on the panel.

Before closing arguments, juror 11 observed Paris without his mask and realized that he had "played music together with the defendant [at church events] about 20 times over the last year." *Paris*, slip op. at 15; 3 RP at 1273. The State moved to strike juror 11 stating, "[F]or cause and also the fact that we are . . . in the fourth day of trial. The juror indicated that he recognized the defendant[,] . . . the juror . . . has spent time with the defendant approximately 20 times in the last year and has spent more time with him within the last two years." 3 RP at 1271. The State further asserted that it would have used its preemptory challenge if it knew this information. Defense counsel objected on the basis, "[T]here is not a sufficient basis to find that this juror cannot be fair and impartial in this case." 3 RP at 1272. The trial court dismissed the juror because "[t]hat close connection can lead to an inference of bias and prejudice and not being able to be impartial." *Paris*, slip op. at 15; 3 RP at 1273. The court replaced juror 11 with an alternate juror.

The jury found Paris guilty of two counts of child rape in the first degree of P.M. and K.G.-R. and two counts of child molestation in the first degree of P.M. and K.G.-R.

4

III.     DIRECT APPEAL

Paris appealed. Division I of this court affirmed his convictions. Regarding juror 11, Paris argued in his statement of additional grounds for review (SAG) that he was entitled to a new trial because the trial court failed to establish that the juror was actually biased. Division I held, "We need not reach that issue because Paris fails to show prejudice." *Paris*, slip op. at 15. The court continued, "The trial court did not excuse juror 11 based on concern about the juror's view of the merits of the evidence presented. And Paris makes no argument that any error substantially swayed his verdict. Indeed, we presume an alternate juror is unbiased." *Paris*, slip op. at 16. The court held that juror 11's release "had no substantial influence on the outcome of the trial, and any error was harmless." *Paris*, slip op. at 16.

Paris petitioned the Supreme Court for review, specifically challenging Division I's holding regarding juror 11. The Supreme Court denied review.

The mandate in Paris's direct appeal was filed on October 30, 2024. Paris filed his timely PRP on July 30, 2025. RCW 10.73.090(3)(b).

ANALYSIS

Paris seeks collateral relief based on two arguments. First he contends that he received ineffective assistance of counsel by appellate counsel. Second he contends that he received ineffective assistance of counsel by trial counsel. We are unpersuaded by either argument.

I.     PRP PRINCIPLES

To prevail in a PRP, the petitioner must establish by a preponderance of the evidence (1) a constitutional error that resulted in actual and substantial prejudice or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 306, 422 P.3d 458 (2018). The petitioner must show that

5

they have competent, admissible evidence to establish facts that would entitle them to relief. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013). Conclusory allegations are insufficient and the factual allegations must be based on more than speculation and conjecture. *Id*.

If a petitioner "does not show actual prejudice for constitutional errors or a fundamental defect resulting in a miscarriage of justice for nonconstitutional errors, the petition must be denied." *State v. K.A.B.*, 14 Wn. App. 2d 677, 704, 475 P.3d 216 (2020). But "if the petitioner has proved actual prejudice or a fundamental defect resulting in a miscarriage of justice, the petition should be granted." *Id*. Alternatively, "if the petitioner makes at least a prima facie showing but the merits of his or her contentions cannot be resolved solely on the record," we may remand for a full hearing on the merits or a reference hearing. *Id*. at 704-05.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail in an ineffective assistance of counsel claim, the petitioner must show that counsel's performance was deficient and that the deficient performance resulted in prejudice. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024). An ineffective assistance of counsel claim fails if the petitioner fails to satisfy either prong of the inquiry. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012).

"Performance is deficient if 'it [falls] below an objective standard of reasonableness.'" *Bertrand*, 3 Wn.3d at 128 (alteration in original) (quoting *State v. McFarland*, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995)). We engage in a strong presumption that counsel's performance was reasonable. *Id*. "Defense counsel's performance is not deficient if it is a 'legitimate trial strategy or tactic[ ].'" *Id*. (alteration in original) (quoting *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009)). Prejudice requires that "there is a reasonable probability that, but for counsel's deficient

performance, the outcome of the proceeding would have been different." *Bertrand*, 3 Wn.3d at 129.

When a petitioner argues that he or she received ineffective assistance of appellate counsel because appellate counsel failed to raise an alleged error, they "'must show that the legal issue which appellate counsel failed to raise had merit and that they were actually prejudiced by the failure to raise or adequately raise the issue.'" *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 787, 100 P.3d 279 (2009) (quoting *In re Pers. Restraint of Maxfield*, 133 Wn.2d 332, 344, 945 P.2d 196 (1997)).

"[I]f a personal restraint petitioner makes a successful ineffective assistance of counsel claim, he has necessarily met his burden to show actual and substantial prejudice" for PRP purposes. *Crace*, 174 Wn.2d at 846-47.

A.     Ineffective Assistance of Appellate Counsel

Paris contends appellate counsel rendered deficient performance by failing to assign error to juror 11's dismissal, failing to file a reply that could have included additional argument after Paris raised the issue in his SAG, and not advocating for oral argument at this court to provide in-person argument on the issue. These claims fail because Paris cannot show that these actions, or inactions, had merit and that Paris was actually prejudiced by the failure to warrant relief under *Dalluge*, 152 Wn.2d at 787.[3]

Under RCW 2.36.110, the trial court is obligated to excuse a juror who, in its judgment, could not remain impartial. Washington courts recognize that the trial court occupies a uniquely

---

[3] Paris also argues that Division I incorrectly decided his direct appeal based on both state and federal law. But a PRP is not a substitute for a timely motion for reconsideration or petition for discretionary review challenging alleged errors in a prior appeal. *See In re Pers. Restraint of Lord*, 123 Wn.2d 296, 329, 868 P.2d 835 (1994); RAP 12.4; RAP 13.4. Accordingly, we decline to address these arguments.

advantageous position in evaluating juror bias. *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 807, 425 P.3d 807 (2018). In assessing whether an impaneled juror exhibits actual bias, the trial judge serves as both "observer and decision maker." *State v. Jorden*, 103 Wn. App. 221, 229, 11 P.3d 866 (2000).

During trial, the parties learned that juror 11 had spent time with Paris on approximately 20 occasions during the preceding year and had additional contact with him over the prior two years. The trial court personally observed the juror, knew of the juror's interaction with two courtroom spectators, and heard the juror acknowledge a longstanding relationship with Paris through church music activities. *Sassen Van Elsloo* draws a distinction between the dismissal of a deliberating juror and the dismissal of an impaneled juror before deliberations begin. 191 Wn.2d at 817-18. The heightened protections applicable to deliberating jurors exist because removing a juror during deliberations can improperly alter the jury's decision-making process or eliminate a dissenting voice. *Id.* at 817-20. Those concerns are absent here. Juror 11 was excused before deliberations commenced, and nothing in the record suggests that the court acted in response to the juror's views of the evidence or attempted to influence the verdict's outcome. Accordingly, appellate counsel did not render deficient performance by not raising this issue on appeal.

Even assuming appellate counsel rendered deficient performance by not assigning error to juror 11's removal, not including argument in the reply following Paris's SAG, and not advocating for oral argument, Paris cannot show prejudice. The Washington Supreme Court has held that the erroneous dismissal of an impaneled juror for reasons unrelated to the merits of the case is subject to harmless-error review. *Id.* at 822-23. Because the trial court did not dismiss juror 11 based on its assessment of the evidence or his position regarding guilt or innocence, no constitutional violation occurred. *Id*. at 822.

Juror 11 was replaced by an alternate juror who had been selected during voir dire, approved by the parties, and sworn by the court. As the court in *Sassen Van Elsloo* explained, replacing an impaneled juror with a qualified alternate does not inject bias into the jury; rather, the alternate is presumed impartial. *Id.* at 822. Paris therefore cannot establish any reasonable probability that the substitution affected the verdict.

Moreover, Division I has already considered and rejected this claim. Addressing the issue in Paris's SAG, the court held that "[t]he trial court did not excuse juror 11 based on concern about the juror's view of the merits of the evidence presented" and further noted that Paris failed to show that any alleged error substantially influenced the verdict. *State v. Paris*, No. 85912-9-I, slip op. at 16. Applying *Sassen Van Elsloo*, the court concluded that "the release of juror 11 had no substantial influence on the outcome of the trial, and any error was harmless." *Id*. The Washington Supreme Court subsequently denied review.

Paris's personal restraint petition offers no basis for revisiting that determination. Because the underlying juror-dismissal claim lacks merit and because any alleged error was harmless, Paris cannot establish prejudice under *Bertrand*. There is no reasonable probability that the outcome of the direct appeal would have been different had appellate counsel raised the issue. Accordingly, his ineffective assistance of appellate counsel claim fails.

In the alternative, Paris contends that, even if he cannot establish ineffective assistance of appellate counsel, we should nevertheless grant relief on this issue in the "interests of justice." PRP at 52. He argues that the error is akin to a manifest error affecting a constitutional right under RAP 2.5, warranting relief. *Id.* We disagree.

Collateral relief may be warranted "'where the interests of justice most urgently require.'" *State v. Lamb*, 175 Wn.2d 121, 128, 285 P.3d 27 (2012) (quoting *State v. Shove*, 113 Wn.2d 83,

9

88, 776 P.2d 132 (1989)). But, here, Paris has failed to demonstrate prejudice from appellate counsel's performance. Without a showing that the outcome of Paris's trial would have been any different, he cannot show that the interests of justice urgently demand relief. Accordingly, we decline to address this argument further.

B.  Ineffective Assistance of Trial Counsel

Paris next contends that trial counsel rendered ineffective assistance by "open[ing] the door" to testimony concerning photographs involving the family dog during counsel's cross-examination of Danielle. PRP at 53-63. Paris further asserts that, had he known counsel would pursue this line of questioning, he would have accepted a plea agreement. This claim fails because Paris demonstrates neither deficient performance nor resulting prejudice.

As discussed above, counsel's performance is not deficient when it is based on a legitimate trial strategy or tactic. *Bertrand*, 3 Wn.3d at 128. Courts are highly deferential to counsel's tactical decisions and will not second-guess reasonable trial strategy through the distorting lens of hindsight. *Id.*

Here, defense counsel pursued a coherent strategy aimed at undermining the credibility of the allegations and suggesting that Danielle had a motive to influence the girls' disclosures during a contentious divorce. Danielle testified about the circumstances under which the allegations of abuse were disclosed. On cross-examination, counsel questioned Danielle regarding her efforts to limit Paris's contact with the children, including her filing for divorce and obtaining a restraining order. Counsel further highlighted the timing of Danielle's allegations and elicited testimony that P.M.'s disclosure was not spontaneous but occurred after Danielle directly asked whether Paris had touched her inappropriately. These questions were plainly directed toward advancing the defense theory that Danielle's actions and motivations influenced the accusations against Paris.

The trial court concluded that this line of questioning opened the door to limited testimony explaining why Danielle sought a restraining order and why she questioned P.M. after discovering photographs of Paris and the family dog with a photograph of P.M. intermixed. Significantly, however, the court did not permit testimony regarding Paris's animal-cruelty conviction. In addition, before the challenged testimony was presented, the court expressly instructed the jury that the evidence was admitted solely to explain Danielle's motivations and subsequent actions and could not be considered for any other purpose.

That defense counsel's otherwise reasonable strategy resulted in the admission of some unfavorable evidence does not render the strategy constitutionally deficient. Counsel's questioning was directed toward establishing possible coaching—a central issue in a case that largely turned on witness credibility. The fact that the trial court later determined the questioning opened the door to limited responsive testimony does not transform a legitimate tactical decision into deficient performance.

Paris also cannot establish prejudice. To satisfy the prejudice prong, he must show a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different. He makes no such showing. *Bertrand*, 3 Wn.3d at 129. The challenged evidence was admitted for a narrowly circumscribed purpose, and the trial court immediately provided a limiting instruction explaining that purpose. Jurors are presumed to follow the court's instructions. *State v. Grisby*, 97 Wn.2d 493, 499, 647 P.2d 6 (1982). Paris's contention that he would have accepted a plea offer if he had known counsel would pursue this line of questioning is simply not enough to establish prejudice. *See In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992) (bald assertions and conclusory statements are not sufficient to warrant relief in a

PRP). Because Paris does not show deficient performance and prejudice, his claim that he received ineffective assistance of counsel at trial fails.

## CONCLUSION

Paris fails to establish that either appellate counsel or trial counsel provided ineffective assistance. Accordingly, he has not shown that he is entitled to relief, and we deny his petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, C.J.

We concur:

_____
Maxa, J.

_____
Glasgow, J.